**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GERALD McNAMARA, | : | CIVIL ACTION |
| Cushman & Wakefield of Pennsylvania, Inc. | : | |
| 1650 Market Street, 33rd Floor | : | |
| Philadelphia, PA 19103, and | : | |
| | : | |
| COLLEEN KUDRICK, | : | |
| Cushman & Wakefield of Pennsylvania, Inc. | : | |
| 1650 Market Street, 33rd Floor | : | |
| Philadelphia, PA 19103, and | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GURBIR S. GREWAL, in his official capacity as | : | |
| New Jersey Attorney General, | : | |
| RJ Hughes Justice Complex | : | |
| 25 Market Street, Box 080 | : | |
| Trenton, NJ 08625-0080, | : | |
| | : | |
| NEW JERSEY STATE BOARD OF REAL | : | |
| ESTATE APPRAISERS, | : | |
| 124 Halsey Street, Newark, NJ 07102 | : | |
| | : | |
| MICHELLE L. MILLER, in her official | : | |
| capacity as Director of the New Jersey | : | |
| Department of Law and Public Safety, | : | |
| 124 Halsey Street, Newark, NJ 07102 | : | |
| | : | |
| PAUL R. RODRIGUES, in his official | : | |
| capacity as Acting Director of the | : | |
| New Jersey Division of Consumer Affairs, | : | |
| 124 Halsey Street, Newark, NJ 07102 and | : | |
| | : | |
| BARRY J. KRAUSER, JOHN McCANN, and | : | |
| JOSEPH PALUMBO, in their official capacities | : | |
| as Members of the New Jersey State Board of | : | |
| Real Estate Appraisers | : | |
| 124 Halsey Street, Newark, NJ 07102 | : | |
| Defendants. | : | NO. _____ |

**COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

Gerald McNamara ("McNamara") and Colleen Kudrick ("Kudrick") (McNamara and Kudrick are collectively referred to as "Plaintiffs"), by and through their undersigned attorneys, file this Complaint for Declaratory and Injunctive Relief and allege in support thereof as follows:

1.     This is a complaint for declaratory and injunctive relief challenging the constitutionality of certain provisions of New Jersey laws and regulations governing the licensing and discipline of real estate appraisers, both as adopted and as applied to Plaintiffs in this action.

2.     Plaintiffs allege that N.J.A.C. 13:40A-6.1 and related regulations are facially unconstitutional and unconstitutional as applied to Plaintiffs under the Fifth and Fourteenth Amendments to the United States Constitution.

## Parties

3.     Plaintiff Gerald McNamara is over the age of 18, resides and is a citizen of the Commonwealth of Pennsylvania, and is a commercial real estate appraiser licensed in, *inter alia*, New Jersey to serve as a commercial real estate appraiser.

4.     Plaintiff Collen Kudrick is over the age of 18, resides and is a citizen of the Commonwealth of Pennsylvania, and is a licensed commercial real estate appraiser.

5.     Gurbir S. Grewal is the New Jersey Attorney General.  He and his office are legally obligated to ensure the provisions of the laws and regulations of New Jersey are enforced.  This includes investigating, disciplining, enforcing, and/or affecting the license status of any licensed commercial real estate appraiser.

6.     The New Jersey Board of Real Estate Appraisers (the "Board") was created by the New Jersey Legislature to regulate the appraisal profession and evaluate the credentials of applicants for licensure and certification.  The Board is responsible for the regulation of real

estate appraisers is New Jersey.

7.     Michelle L. Miller, in her official capacity, is a Director of the New Jersey Department of Law and Public Safety, which has responsibility to oversee the actions of the New Jersey Division of Consumer Affairs, within which the Board is housed.

8.     Paul R. Rodrigues, in his official capacity as Acting Director of the New Jersey Division of Consumer Affairs, has responsibility to oversee the actions of the Board.

9.     Barry J. Krauser, John McCann, and Joseph Palumbo, in their official capacities as Members of the Board, are responsible to enforce and discipline licensed commercial real estate appraisers in New Jersey.

## Jurisdiction and Venue

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 & 1988, and the federal common law jurisdictional doctrine established in *Ex parte Young,* 209 U.S. 123 (1908), to redress the deprivation under color of state law of rights secured by the federal constitution.

11.     This Court also has jurisdiction under 28 U.S.C. §§ 1331 & 2201 over Plaintiffs' facial challenges to New Jersey laws and regulations.

12.     The relevant acts and omissions occurred, and are likely to continue, in the State of New Jersey; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

13.     A preliminary injunction, enjoining Defendants from taking any action to enforce the challenged New Jersey laws and regulations, will protect Plaintiffs' rights while these proceedings are pending.  A permanent injunction, enjoining Defendants from enforcing the challenged provisions of the Act, will protect Plaintiffs' rights after the final resolution of these proceedings.

**The Board's Notice of Claim**

14.     The State of New Jersey, through the office of the Attorney General, has sought to discipline the Plaintiffs for violations of the Uniform Standards of Professional Appraisal Practice ("USPAP") as more set forth in the attached Complaints marked Exhibits A ("McNamara Complaint") and B (the "Kudrick Complaint").

15.     Gerald McNamara ("McNamara") filed a Response to the McNamara Complaint ("McNamara and Kudrick Response").  *See* Exhibit C.

16.     Colleen Kudrick ("Kudrick") filed a response to the Kudrick Complaint.  *See* Exhibit D.

17.     The parties wish to address the Constitutional issues raised by the Plaintiffs in the McNamara and Kudrick Response.  Administrative Law Judge, the Honorable Jeff S. Masin, issued an Order staying the disciplinary proceedings pending the outcome of this constitutional challenge to facilitate judicial review of the issues so raised.

18.     Exhibits A and B assert that McNamara and Kudrick were guilty of failing to abide by the dictates of USPAP and should be disciplined accordingly.

19.     USPAP was originally created by non-governmental / private party appraisal industry representatives, which was improperly and impermissibly delegated the responsibility to promulgate regulations that governmental employees intended to enforce against citizens.

20.     TITLE XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") was passed in the aftermath of the Savings and Loan crisis of the late 1980s and the Law and Public Safety Division of the Division of Consumer Affairs promulgated real estate appraisal requirements for Federally Related Transactions ("FRTs").

21.     The stated purpose of FIRREA was to protect federal financial and public policy interests in real estate related transactions.

22.     The Federal Financial Institutions Examinations Council ("FFIEC") consists of the representatives of the heads of the agencies comprising the FFIEC (the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, and the National Credit Union Administration Board.)

23.     The FFIEC was established to "prescribe uniform principles, standards, and report forms for the federal examination of financial institutions."

24.     FIRREA added the Appraisal Subcommittee ("The Appraisal Subcommittee") to the FFIEC.

25.     FIRREA Title XI created real estate appraisal requirements for FRTs.

26.     FRTs were defined in FIRREA as any real estate related financial transaction that: (1) the FDIC or any regulated institution engages in or contracts for; and (2) requires the services of an appraiser.

27.     Real estate related financial transactions are defined as sales, refinancing, and mortgages.

28.     FIRREA designated the Appraisal Standards Board ("ASB") of The Appraisal Foundation ("TAF") to create "generally accepted standards of practice" for real estate appraisals.

29.     FIRREA designated the Appraisal Qualifications Board ("AQB") of TAF to create requirements for real estate appraiser qualification.

30.     FIRREA permitted states to establish a "state licensed appraiser" category that did not specifically meet TAF / AQB requirements.

31.     Each federal financial institution regulatory agency is statutorily required to establish appraisal standards that meet the minimum requirements adopted by a private organization, the Appraisal Foundation, or TAF.

32.     According to its bylaws, TAF "is a private, not-for-profit corporation charged by [Title XI of FIRREA] with the responsibility of establishing, improving and promoting minimum uniform appraisal standards and appraiser qualifications criteria."

33.     The Dodd-Frank Act (the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010) substantially overhauled major portions of the U.S. financial and banking systems in response to the financial crisis of 2008.

34.     The Mortgage Reform and Anti-Predatory Lending Act ("MRAPLA") was originally passed as a standalone bill by the U.S. House of Representatives in 2009, but was never passed by the U.S. Senate.  A revised version of the standalone bill later became Title XIV of the Dodd-Frank Act.

35.     MRAPLA required a "state licensed appraiser" to meet the TAF / AQB requirements.

36.     MRAPLA gave the Appraisal Subcommittee the specific authority to enforce the AQB requirements for a "Trainee Appraiser" and/or a "Supervisory Appraiser."

37.     The ASB and AQB were described as part of TAF.

38.     There is no federal oversight of USPAP before it becomes law as to non-FRTs in NJ.

39.     There is no State oversight of USPAP before it becomes law as to non-FRTs in NJ.

- 6 -

40.     The Appraisal Subcommittee of the Federal Financial Institutions Examining Council ("FFIEC") was designated as the federal governmental entity to oversee compliance with FIRREA.

41.     In MRAPLA, the Appraisal Subcommittee was given the ability to prescribe regulations.

42.     MRAPLA limited the areas in which the Appraisal Subcommittee could prescribe regulations.

43.     FIRREA gave the Appraisal Subcommittee the specific function of:

      a)     monitoring states on certification / licensing of appraisers, including "USPAP;" and,

      b)     monitoring the Appraisal Foundation.

44.     The Appraisal Subcommittee does not have oversight authority on the substantive creation, revision, or promulgation of USPAP.

45.     FFIEC was not given oversight authority regarding the substantive creation, revision, or promulgation of USPAP, either directly or indirectly as a result of FFIEC oversight of the Appraisal Subcommittee.

46.     States only needed to conform to USPAP as to FRTs.

47.     The Appraisal Subcommittee Policy Statements do not include authority to oversee creation, or amendment, of USPAP.

48.     Congress delegated USPAP creation, amendment, and administration by TAF and the ASB.

49.     The Appraisal Subcommittee does not have legal authority to supervise TAF, as to the creation of USPAP, under the original version of FIRREA.

50.     The Appraisal Subcommittee does not have legal authority to supervise TAF, as to the creation of USPAP, under the amended version of FIRREA.

51.     "The Appraisal Foundation is directed by a Board of Trustees ("BOT") that is responsible for the governance of the organization.  The BOT appoints members and provides financial support and oversight to two independent Boards: the Appraiser Qualifications Board ['AQB'] and the Appraisal Standards Board ['ASB']."   https://www.appraisalfoundation. org/imis/TAF/About_Us/TAF_Boards/TAF/TAF_Boards.aspx?hkey=7b71f017-fd58-4c72-bf3c-90fdfb06cd56.

52.     The membership of the two independent boards overseen by the BOT are created as follows:

> a.) The AQB is composed of five to nine members who are appointed by the BOT and may serve up to eight years.  Activities of the Board are directed by the Chair, who is appointed by the BOT for a one-year term; and,

> b.) The ASB is composed of five to nine members who are appointed by the BOT and may serve up to eight years.  Activities of the Board are directed by the Chair, who is appointed by the BOT for a one-year term.  *Id.*

53.     No officer, director, or committee member of TAF, past or present, has been elected to that position — *i.e.*, elected by the general public, as opposed to being elected from within TAF — or appointed by anyone who holds any government office.

54.     The USPAP was copyrighted and the copyright was donated to TAF on April 27, 1987.

55.    The USPAP is updated every two years by TAF.    https://www.appraisal
foundation.org/mis/TAF/Standards/Appraisal_Standards/Uniform_Standards_of_Professional_A
ppraisal_Practice/TAF/USPAP.aspx.

56.    TAF is a private, non-profit organization comprised of appraisal industry
representatives.

57.    TAF adopted USPAP as the "generally acceptable standards of practice" for real
estate appraisal.

58.    The ASB was designated in FIRREA to promulgate "generally accepted appraisal
practices."

59.    The ASB was designated in FIRREA to promulgate "generally accepted appraisal
standards" for FRTs.

60.    Each Federal Institutions Regulatory Agency was prescribed appraisal standards
with the "generally accepted appraisal standards" of TAF's ASB as a minimum standard.

61.    TAF was, and is, a Section 501(c)(3) corporation under the Internal Revenue Code.

62.    TAF does not have governmental constraints over its staff and officers.

63.    TAF's BOT is chosen by appraisal industry organizations.

64.    The CEO of TAF is appointed by its BOT.

65.    Officers and employees of TAF are appointed by the CEO.

66.    ASB members are appointed by the BOT of TAF.

67.    The ASB promulgates USPAP with no official signoff by the Appraisal
Subcommittee.

68.    USPAP is created, amended, and administered by competitors of the Plaintiffs.

69.     The New Jersey Appraisal Board is comprised of competitors of Plaintiffs and their employer, Cushman & Wakefield of Pennsylvania, Inc. ("C&W").

70.     Neither the Appraisal Subcommittee, nor any other federal entity, has oversight of the creation, amendment, promulgation, publishing, sale, or interpretation of USPAP by the ASB and/or TAF.

71.     The Appraisal Subcommittee does not make amendments to USPAP.

72.     The final determination of USPAP amendment is made by the ASB in a private meeting without a record.

73.     The Appraisal Subcommittee does not act as though it has legal authority to either approve or disapprove any amendments to USPAP.

74.     Between 1989 and 2010, there were no amendments to FIRREA regarding Congressional delegation of authority to TAF, ASB, and/or AQB.

75.     Between 1989 and 2010, there were no amendments to FIRREA regarding Congressional delegation of authority to the Appraisal Subcommittee oversight of TAF.

76.     Between 1989 and 2010, there were no amendments to FIRREA regarding USPAP.

77.     USPAP 2005 became effective on January 1, 2005, and was in effect at the time of Plaintiffs' Appraisal.

78.     USPAP 2005 contains the statement: "[appraisers must] be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal."

79.     The 1991 NJ Appraiser Act did not provide the Board with authority to regulate any appraisals, beyond those prepared for FRTs, pursuant to FIRREA.

80.    The 1991 NJ Appraiser Act did not include a requirement for non-FRT appraisals to conform with federal requirements.

81.    The Board's proposed initial regulations regarding the NJ Appraiser Act were Chapter 40A, State Board of Real Estate Appraisers, adopted as R.1991 d.598, effective December 16, 1991.

82.    The State's proposed initial regulations regarding the NJ Appraiser Act were amended several times since.

83.    In the 1996 amendments to the NJ Appraiser Act, the Law and Public Safety Division of the Division of Consumer Affairs expanded the authority of the Board to include all appraisals / valuations performed in the State, whether those appraisals were FRTs, as defined in FIRREA, or appraisals for purposes other than an FRT ("non-FRTs").

84.    Neither the New Jersey legislature nor any administrative agency ever delegated the authority to TAF to set standards governing appraisals in New Jersey.

85.    No New Jersey regulatory or administrative body, nor any individual(s) delegated or appointed thereby, nor anyone with any connection to any level of New Jersey government ever had any involvement in, comment on, or participation in the original creation of the standards in the USPAP.

86.    No New Jersey regulatory or administrative body, no individual(s) delegated or appointed thereby, nor anyone with any connection to any level of New Jersey government ever had any involvement in, comment on, or participation in the biennial updates to the standards in the USPAP.

87.    No New Jersey regulatory or administrative body has ever adopted the standards in the USPAP as being the standards to which appraisals in New Jersey must adhere or that a failure

by an appraiser to do appraisals in compliance with the standards in the USPAP can result in civil, criminal, and/or administrative penalties.

88.     Simply put, there is no State oversight of the development of USPAP or its amendments before it becomes effective in New Jersey.

89.     At no time since the adoption of USPAP in 1996, did any of the amendments to USPAP promulgated by the TAF undergo any part of the Administrative Procedure Act in New Jersey.

90.     The Board is comprised of competitors of Plaintiffs and their employer, C&W.

91.     At the time of the filing of the complaint by the Attorney General of New Jersey in this matter, there were no governmental employees who were active participants of the Board.  The only Board members who deliberated on the filing of the charges against the Plaintiffs were competitors of the Plaintiffs and their employer, C&W.

92.     There has been no legislative action on any amendments to USPAP in New Jersey since 1997.  USPAP has been amended and/or modified several times from 1997 until the relevant version of USPAP published in 2005.

93.     In expressing their collective opinions concerning the work of the Plaintiffs on the Property, the members of the Board were performing an "appraisal" governed by the requirements of USPAP, yet in expressing their individual and collective opinions, they failed to follow the requirements of USPAP.

94.     The 2005 version of USPAP does not contain a definition or explanation of "recognized methods and techniques that are necessary to produce a credible appraisal."

## Count I
### (All Defendants — Due Process,
### 42 U.S.C. §§ 1983 & 1988)

95.     Plaintiffs incorporate by reference all preceding allegations as if fully stated herein.

96.     The Fifth Amendment to the United States Constitution precludes the government from "depriving any person of life, liberty, or property, without the due process of law."  U.S. CONST. amend. X, § 1.

97.     The Fourteenth Amendment to the United States Constitution precludes any State government from "depriving any person of life, liberty, or property, without the due process of law."  U.S. CONST. amend. XIV, § 1.

98.     The property interest of licensed professionals is a well-established liberty and property right protected by the Due Process Clause of the United States Constitution.

99.     Plaintiffs have a liberty and property interest in their rights as a licensed professional and should be entitled to the certain rights, responsibilities, benefits, and protections prior to which the State can revoke any professional license.  Requirements of procedural due process apply to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).

100.    Defendants violate the liberty interests of the Plaintiffs in two respects;

    a)     The State violated the non-delegation rule relating to the delegation to private individuals of governmental legislative functions by permitting private individuals, without any government oversight, to establish standards of conduct and measures by which such standards are to be

judged; and,

b) In seeking to discipline the Plaintiffs, the State is using a Board of private individuals who are competitors of the Plaintiffs and who are using standards created by private individuals to judge Plaintiffs while failing to abide by those same regulations in doing so.

101. Defendants' infringement upon the Plaintiffs' liberty and property right to enjoy the rights and privileges of their licenses violates the Due Process Clause.

102. Defendants' interference upon Plaintiffs' liberty and property right to enjoy the rights and privileges of their licenses violates the Plaintiffs' fundamental rights and fundamental freedom in liberty and property under the Fourteenth Amendment.

103. The New Jersey laws and regulations relating to the licensing and lawful practice as a property appraiser facially and as applied to Plaintiffs deprives Plaintiffs of their Due Process rights under the Fourteenth Amendment and is not narrowly tailored to serve a compelling governmental interest.

104. Defendants, acting under color of state law, are depriving Plaintiffs of their rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983

105. Plaintiffs are entitled to their costs, including their reasonable attorneys' fees, pursuant 42 U.S.C. § 1988.

106. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57, Plaintiffs seek a declaratory judgment that N.J.A.C. 13:40A-6.1 and related regulations violate the Due Process Clause of the Fifth and Fourteenth Amendment to the United States Constitution.

107.    Plaintiffs have no other adequate remedy at law.

**Count II**
**(All Defendants — Request for a**
**Preliminary and Permanent Injunction)**

108.    Plaintiffs incorporate by reference all preceding allegations as if fully stated herein.

109.    Defendants violate the liberty interests of the Plaintiffs in two respects;

    a)    The State violated the non-delegation rule relating to the delegation to private individuals of governmental legislative functions by permitting private individuals, without any government oversight, to establish standards of conduct and measures by which such standards are to be judged; and,

    b)    In seeking to discipline the Plaintiffs, the State is using a Board of private individuals who are competitors of the Plaintiffs and who are using standards created by private individuals to judge Plaintiffs while failing to abide by those same regulations in doing so.

110.    Defendants' infringement upon the Plaintiffs' liberty and property right to enjoy the rights and privileges of their licenses violates the Due Process Clause.

111.    Plaintiffs seek the entry of a preliminary injunction enjoining Defendants and Defendants' officers, agents, servants, employees, attorneys, and other persons in active concert or participation with Defendants or Defendants' officers, agents, servants, employees or attorneys from enforcing N.J.A.C. 13:40A-6.1 and related regulations.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiffs pray that this Court:

(A)     Enter a judgment declaring that N.J.A.C. 13:40A-6.1 and related regulations violate the Due Process Clause of the Fifth Amendment to the United States Constitution;

(B)     Enter a judgment declaring that N.J.A.C. 13:40A-6.1 and related regulations violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(C)     Enter a preliminary and permanent injunction enjoining Defendants from enforcing N.J.A.C. 13:40A-6.1 and related regulations under the Due Process Clause of the Fourteenth Amendment, as challenged   herein;

(D)     Award costs and expenses to Plaintiffs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

(E)     Award such additional relief as this Curt deems just and proper.


By:     _/s/ Kevin F. Berry_____
        Kevin F. Berry, Esquire
        **O'HAGAN MEYER**
        46 West Main Street
        Maple Shade, NJ  08052
        267-386-4353
        kberry@ohaganmeyer.com


By:     _/s/ Dennis A. Scardilli_____
        Dennis A. Scardilli, Esquire
        **LAW OFFICE OF DENNIS A. SCARDILLI LLC**
        105 Woods Road
        Absecon, NJ  08201
        609-568-0432
        dennis@scardillilaw.com